UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIO PAREDES GARCIA,<br><br>                Plaintiff,<br><br>  v.<br><br>HARBORSTONE CREDIT UNION,<br><br>                Defendant. | CASE NO. C21-5148 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant Harborstone Credit Union's motion to dismiss for failure to state a claim. Dkt. 9. The Court has considered the motion and the briefings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

**A.   Overview**

Plaintiff Mario Paredes Garcia is a participant in the Deferred Action for Childhood Arrivals ("DACA") program.[1] He alleges that Harborstone discriminated against him based on his alienage status when he applied for a consumer loan. Specifically, he alleges that in policy and practice, Harborstone finds DACA participants and other non-citizens ineligible for consumer loans based solely on their lack of citizenship. Dkt. 1-1, ¶ 2. He alleges that Harborstone takes loan applications from non-citizens and obtains a copy of the applicant's consumer report. *Id*. ¶ 3. This request harms the applicant's credit rating, and "[t]hen—regardless of the creditworthiness shown on the report—Harborstone automatically denies the consumer's application for credit because the consumer is not a United States citizen." *Id*. Paredes Garcia alleges violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and seeks to represent a class of non-U.S. citizens including DACA participants. Dkt. 1-1.

**B.   Background**

In March 2019, Paredes Garcia and Lai opened joint checking and savings accounts at Harborstone which required providing their Social Security numbers and

---

[1] While DACA recipients "enjoy no formal immigration status," the Department of Homeland Security "considers DACA recipients not to be unlawfully present in the United States because their deferred action is a period of stay authorized by the Attorney General." *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1058–59 (9th Cir. 2014) (citing 8 U.S.C. § 1182(a)(9)(B)(ii); 8 C.F.R. 214.14(d)(3)).

driver's license or identification card numbers. Dkt. 1-1. ¶ 43. The couple decided to purchase a new car, and Paredes Garcia individually applied for a car loan via phone. *Id*. ¶ 45. While the application was pending, Paredes Garcia opened individual checking and savings accounts with a Harborstone branch manager in person, using his Social Security card and driver's license. *Id*. ¶ 46. The loan was approved, and Paredes Garcia again provided his Social Security card and driver's license, this time in person. *Id.* ¶ 47. Because Paredes Garcia received his Social Security number and card through DACA, the front of the card states "VALID FOR WORK ONLY WITH DHS AUTHORIZATION." *Id*. ¶ 48.

      Paredes Garcia and Lai subsequently jointly applied for a second car loan. *Id*. ¶ 53. Harborstone "pulled" Paredes Garcia's credit report, which caused his credit score to decrease six points. *Id*. ¶ 54 & n.31. Paredes Garcia and Lai had very good credit, as well as income and debt-to-income ratios which qualified them for the loan. *Id*. ¶¶ 55–56. Lai presented Paredes Garcia's Social Security card and driver's license as part of the application process. *Id*. ¶¶ 57–59. Harborstone denied the application. *Id*. ¶ 62. Harborstone management told Lai that Harborstone had a policy not to accept Social Security numbers like Paredes Garcia's. *Id*. ¶¶ 64–65. After requesting official documentation of the denial, Paredes Garcia and Lai received letters stating "ITIN/WPO Social Security Numbers not acceptable for financing[.]" *Id*. ¶ 71. Harborstone has since sent Paredes Garcia forty-eight different pre-approved loan offers. *Id*. ¶ 73.

      Paredes Garcia sued Harborstone in Pierce County Superior Court, alleging violations of § 1981 and the FCRA. Harborstone removed to this Court and now moves

ORDER - 3

to dismiss, contending that Paredes Garcia alleges only permissible immigration-status based discrimination and that the FRCA permits it to pull credit reports from loan applicants. Dkt. 9. Paredes Garcia responded, countering that he sufficiently alleged alienage discrimination and that Harborstone's conduct violates the FRCA. Dkt. 10. Harborstone replied, emphasizing that alienage and immigration-status discrimination are distinguishable and that it had a permissible purpose to obtain Paredes Garcia's credit report. Dkt. 11.

## II.   DISCUSSION

### A.   Legal Standard on Motion to Dismiss for Failure to State a Claim

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### B.   Paredes Garcia States a Claim for Violations of the Civil Rights Act

Federal law provides that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . .

as is enjoyed by white citizens." 42 U.S.C. § 1981(a). While § 1981 has been primarily considered in the context of racial discrimination, it also protects against alienage discrimination. *Sagana v. Tenorio*, 384 F.3d 731, 738 (9th Cir. 2004).

Harborstone contends that, at best, Paredes Garcia alleges that it considered his immigration status, not his alienage, as a credit risk factor as permitted by the Equal Credit Opportunity Act, 15 U.S.C. § 1691, so his claims fail as a matter of law. Dkt. 9 at 2. Paredes Garcia counters that (1) he pleads a claim based on his citizenship status and (2) there is no meaningful distinction based on immigration status and citizenship status for the purposes of his claim. Dkt. 10 at 10–11.

Specifically, Harborstone argues that Paredes Garcia's complaint only alleges facts showing that "he was denied a loan because of his DACA status, not because he was not a citizen." Dkt. 11 at 1. Harborstone is correct that the facts in the complaint describing Paredes Garcia's particular experience with Harborstone (as the putative class representative) are based on his DACA status. Harborstone is not correct that these facts preclude Paredes Garcia from plausibly stating a claim on behalf of non-citizens, a larger group of which he is also a member.

Paredes Garcia's plausibly alleges that Harborstone has a policy and practice of refusing to extend credit to non-citizens, *including* DACA participants, in violation of § 1981. *Twombly*, 550 U.S. at 570. Paredes Garcia alleges he presented a Social Security card with the words "VALID FOR WORK ONLY WITH DHS AUTHORIZATION" printed on the front. This plausibly alleges that the recipient, Harborstone, was alerted to his lack of U.S. citizenship.

1     Harborstone emphasizes that Regulation B, implementing the Equal Credit

2  Opportunity Act ("ECOA"), a provision of the Consumer Credit Protection Act, 15

3  U.S.C. § 1691, *et seq.*, permits a creditor to "inquire about the permanent residency and

4  immigration status of an applicant . . . in connection with a credit transaction." Dkt. 9 at 6

5  (citing 12 C.F.R. § 202.5(e)). Harborstone argues that it only considers immigration

6  status and that it does lend to non-citizen permanent residents. These arguments are

7  unpersuasive on a motion to dismiss.

8     First, Harborstone's defense based on what it claims are its actual policies and

9  practices is a factual defense which cannot be resolved on a motion to dismiss, which

10 tests the sufficiency of the plaintiff's pleadings, not his evidence. *Keniston*, 717 F.2d at

11 1301. A summary judgment motion is the appropriate context for resolving Harborstone's

12 assertion that no evidence can support Paredes Garcia's claims.

13    Second, Paredes Garcia's claim is that Harborstone violates § 1981 when it denies

14 non-citizens the right to make and enforce contracts for credit. Dkt. 1-1, ¶¶ 93–95. He

15 does not allege Harborstone violates § 1981 when it *inquires* about immigration status

16 and permanent residency, though at least one district court in the Ninth Circuit has

17 expressed concern about § 202.5(e)'s consistency with § 1981. *See Juarez v. Social*

18 *Finance, Inc.*, 2021 WL 1375868, at *7 (N.D. Cal. April 12, 2021) ("The Court has some

19 concerns that [§ 202.5(e)] could be read to conflict with § 1981," though "at this early

20 stage in the litigation, the Court need not resolve this potential issue."). Assuming § 1981

21 permits the inquiry about permanent residency and citizenship status contemplated in

22 § 202(e), it is still plausible that Harborstone then proceeds to discriminate based on a

lack of citizenship, which § 1981 does not allow. *See Perez v. Wells Fargo & Co.*, Case No. 17-cv-00454-MMC, 2017 WL 3314797, at *2 n.4 (N.D. Cal. Aug. 3, 2017) (references to alienage in regulations promulgated under ECOA do not "state[] a creditor is free to decline credit to an applicant solely on the basis of alienage.").

Other district courts have concluded particular allegations of discrimination based on immigration status did not demonstrate actionable alienage discrimination under § 1981. For example, Harborstone relies on *Talwar v. Staten Island University Hospital*, which was decided on summary judgment. No. 12-CV-0033 (CBA)(JMA), 2014 WL 5784626 (E.D.N.Y Mar. 31, 2014), *aff'd in part, vacated in part on other grounds and remanded*, 610 F. App'x 28 (2d Cir. 2015). The plaintiff alleged she experienced alienage discrimination when she was terminated based on her lack of license. *Id*. at *7. The district court concluded on the facts that the discrimination she experienced was based on immigration status rather than citizenship because the license was available to permanent residents, but not to other immigrants.

In another example, in *Ofoche v. Apogee Medical Group*, the district court concluded that the plaintiff had failed state a claim for race and national origin discrimination in violation of § 1981. Case No. 418cv00006, 2018 WL 4512076, at *4 (W.D. Va. Sept. 20, 2018). While the plaintiff alleged race and national origin discrimination, the district court reasoned that the facts in his complaint about discrimination experienced by "white, black, Asian, or Hispanic individuals, so long as the [employee] is present in the country on an H-1B visa" did not support that claim and could only support a claim for discrimination on the basis of immigration status. *Id*.

ORDER - 7

1    On the information before the Court, it is not clear that rejection of Social Security numbers "like" Paredes Garcia's, Dkt. 1-1, ¶¶ 64–65, shows only discrimination based on immigration status rather than discrimination based on alienage. Factual development of Paredes Garcia's claim may help the Court analyze the alleged discrimination's motivation. *See Vaughn v. City of New York*, No. 06-CV-6547 (ILG), 2010 WL 2076926 (E.D.N.Y. May 24, 2010) (reasoning that discrimination based on immigration status must be motivated in part by a lack of citizenship to be alienage discrimination). The Court thus continues to conclude that Paredes Garcia's allegation that Harborstone discriminates against all non-citizens based on their lack of citizenship plausibly states a claim on a motion to dismiss.

    Therefore, Harborstone's motion to dismiss Paredes Garcia's § 1981 claim is DENIED.

**C.**    **Paredes Garcia States a Claim for Violation of the FCRA**

    "To assert a claim against a party for requesting a consumer credit report without a permissible purpose, a plaintiff must establish: (1) the defendant obtained a consumer credit report from a Consumer Reporting Agency, (2) without a permissible purpose, and (3) the defendant acted willfully or negligently in requesting the report." *Demay v. Wells Fargo Home Mortgage*, 279 F. Supp. 3d 1005, 1008 (N.D. Cal. 2017) (citing *VanDyke v. N. Leasing Sys., Inc.*, No. CIV.S. 07-1877 FCD GGH PS, 2009 WL 3320464, at *3 (E.D. Cal. 2009)). Permissible purposes include intent "to use the information in connection with a credit transaction involving the consumer . . . and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

The parties do not dispute the first element. Harborstone contends that Paredes Garcia fails to show lack of permissible purpose because he had submitted a loan application, so it intended to use the information in connection with his credit transaction. Paredes Garcia counters that because Harborstone already had possession of the only information it used to deny his application (his Social Security number), it already knew it would not engage in a credit transaction "involving the extension of credit" to him. Harborstone also argues it was not negligent because Paredes Garcia alleges that the credit report pull occurs automatically when an application is submitted, "[n]o Harborstone employee charged with [knowledge of his status] made the decision to obtain Plaintiff's credit report." Dkt. 11 at 9–10 (citing Dkt. 1-1, ¶ 54).

Taking Paredes Garcia's material allegations as admitted and construing the complaint in his favor, *Keniston*, 717 F.2d at 1301, his pled facts allege that Harborstone as the defendant entity knew his DACA status through previous evaluation of his Social Security card, had a policy of not lending to non-citizens, and pulled his credit report despite knowing that he would not qualify for credit under their policy. Under these facts as alleged, the third element is also satisfied—the harm to Paredes Garcia's credit was at least negligent. *Demay*, 279 F. Supp. 3d at 1008. While some of Paredes Garcia's class-based allegations appear to differ from his experience, (alleging that Harborstone pulls credit reports from non-citizens *before* learning their citizenship status, Dkt. 1-1, ¶ 104), this goes to issues related to class certification such as typicality rather than failure to state a claim. Therefore, the motion to dismiss as to Paredes Garcia's FCRA claim is also DENIED.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Harborstone's motion to dismiss, Dkt. 9, is **DENIED**.

Dated this 9th day of August, 2021.

BENJAMIN H. SETTLE
United States District Judge