1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| MARIO PAREDES GARCIA,<br><br>          Plaintiff,<br><br>   v.<br><br>HARBORSTONE CREDIT UNION,<br><br>          Defendant. | CASE NO. 3:21-cv-05148-LK<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

11
12
13
14
15
16

     This matter comes before the Court on Plaintiff Mario Paredes Garcia's Motion for Preliminary Approval of Class Action Settlement. Dkt. No. 33. Defendant Harborstone Credit Union does not oppose the motion. The Court has read and considered the parties' Amended Settlement Agreement and supporting materials, Dkt. Nos. 40, 40-1–40-4, which the parties submitted following a hearing on the motion on June 2, 2023, Dkt. No. 39. For the reasons discussed below, the Court GRANTS Mr. Paredes Garcia's motion for preliminary settlement approval and APPROVES the proposed notice plan in accordance with this Order.

17
18
19
20
21
22
23
24

# I.   BACKGROUND

## A.   Factual Background and Procedural History

Mr. Paredes Garcia is a noncitizen resident of Gig Harbor who was granted protected status under the Deferred Action for Childhood Arrivals ("DACA") program. Dkt. No. 1-1 at 1–2. Harborstone is a Washington-based credit union with a majority of its branches located in Pierce County. *Id.* at 2. On April 22, 2020, after previously being granted an auto loan from Harborstone, Mr. Paredes Garcia submitted a second auto loan application that Harborstone denied because his DACA documentation was "not acceptable for financing." *Id.* at 10–14. Prior to the denial, Harborstone conducted a "hard" credit pull of Mr. Paredes Garcia's consumer credit score, resulting in a six-point drop in his score. *Id.* at 8, 11 & n.31. Based on this experience, Mr. Paredes Garcia claims that Harborstone engages in a policy and practice of (1) wrongfully denying DACA participants and other noncitizen residents the opportunity to contract for credit in violation of 42 U.S.C. § 1981, and (2) wrongfully conducting hard credit pulls in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq. Id.* at 15–16, 20–23. On January 26, 2021, Mr. Paredes Garcia initiated this class action lawsuit against Harborstone in Pierce County Superior Court on behalf of two sub-classes: one specifically pertaining to Section 1981 and one specifically pertaining to FCRA. *Id.* at 16.

On March 1, 2021, Harborstone removed the action to federal court. Dkt. No. 1. After the Court denied Harborstone's motion to dismiss, Dkt. No. 15, the parties moved to stay the case in in order to pursue early settlement, Dkt. No. 22. In October 2022, the parties reached an agreement in principle, Dkt. No. 29, and in December 2022, they finalized a long form settlement agreement, Dkt. No. 30. Thereafter, Mr. Paredes Garcia filed his unopposed motion for preliminary approval of the settlement along with the parties' initial settlement agreement, proposed notice, and other supporting materials. Dkt. Nos. 33, 34-1–34-5. On June 2, 2023, the Court held a hearing on the

motion to address questions raised by the proposed settlement, *see* Dkt. Nos. 37–39, and the parties submitted an amended agreement for the Court's consideration on June 23, 2023, Dkt. No. 40-1.

**B.      Amended Settlement Agreement**

They key terms of the settlement are as follows.

1.    Class Definition

The class is defined as:

> [a]ll individuals who resided in the United States at the time they applied for a loan from Harborstone Credit Union, and for whom Harborstone obtained a credit report, and whose applications were declined at any time between January 26, 2018, and August 31, 2021 for the reason that they had a tax identification number because they were not permanent residents of the United States.

Dkt. No. 40-1 at 2.[1] The parties indicate that this class is comprised of 249 members, assuming no one decides to opt out. *Id.* at 3, 14; *see also* Dkt. No. 33 at 9. During the June 2, 2023 hearing, the parties provided additional clarity on how Harborstone identified the class members by pulling data based on loan application denials.

2.    Class Compensation

Harborstone has agreed to pay $186,750 to establish a settlement fund, which will be divided equally among the 249 class members into $750 check payments to be issued within 21 days of the settlement fund payment. Dkt. No. 40-1 at 3–4. For class members who submit valid exclusions, the $750 check that class member would have received will be divided evenly among the remaining class members who do not opt out. *Id.* at 4. Harborstone will separately provide up to $25,000 for settlement administration costs. *Id.* at 3, 5.

---

[1] Excluded from the Class are (a) the judge to whom this case is assigned and any member of the judge's immediate family; (b) any officers, directors, agents, legal representatives, assignees, or successors of Harborstone Credit Union; (c) any entity in which Harborstone Credit Union has a controlling interest or that has a controlling interest in Harborstone Credit Union; and (d) any individual who has an active dispute with Harborstone Credit Union based on the facts asserted in Plaintiff's Complaint, filed in Pierce County Superior Court on January 26, 2021. *Id.*

3. <u>Changes to Harborstone's Policies and Practices</u>

Harborstone has agreed to implement the following changes to its policies and procedures:

(1) Harborstone Credit Union shall not maintain policies, practices, or guidelines that allow the evaluation of any person who is a non-United States citizen under any different guideline or standard than it would evaluate a person who is a United States citizen when considering whether to admit the person as a member or extend credit to the person;

(2) Harborstone Credit Union shall not require an applicant to provide documentation showing the applicant can remain in the United States legally through the maturity date of a loan for which the applicant has applied;

(3) Harborstone shall not consider an applicant's national origin, race, or immigration status as factors to evaluate creditworthiness, regardless of whether a person is a United States citizen; and

(4) Harborstone shall maintain language in its policies confirming that it does not discriminate on account of race, color, or national origin.

Dkt. No. 40-1 at 7.

4. <u>Release</u>

In exchange for the aforementioned relief and to settle all claims raised in this action, class members will be bound by the following release:

As of the Effective Date of this Amended Settlement Agreement, all Members of the Settlement Class, including Plaintiff, fully and finally release all claims that were or could have been brought against Harborstone Credit Union in the Action (as well as its respective predecessors, successors, assigns, employees, officers, directors, insurers, and/or heirs) based on the facts asserted in Plaintiff's Complaint, filed in Pierce County Superior Court on January 26, 2021 (the "Release"). The scope of this Release shall be from January 26, 2018, to August 31, 2021. This Release specifically includes, but is not limited to, any claims for exemplary damages, statutory damages, compensatory damages, interest, fees, costs, attorneys' fees, and all other claims made in the Action or that could have been made in the Action based on the allegations in Plaintiff's Complaint.

Dkt. No. 34-1 at 10; *see also* Dkt. No. 33 at 12–13.

5. <u>Service Award</u>

Subject to Court approval, Harborstone has agreed to pay Mr. Paredes Garcia up to $5,000, separate and apart from the settlement fund, as an award for serving as class representative. Dkt.

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 4

No. 40-1 at 2, 5; *see also* Dkt. No. 33 at 10–11.

### 6.  Attorneys' Fees and Costs

Subject to Court approval and separate and apart from any other amount going toward settlement, Harborstone has agreed to pay up to $150,000 in attorneys' fees and costs to Mr. Paredes Garcia's counsel. Dkt. No. 40-1 at 2, 6; *see also* Dkt. No. 33 at 11–12.

### 7.  Opt-Out and Objection Procedure

In order to opt out of the settlement, class members will be required to send written notice to the settlement administrator via mail, email, or a form on the settlement website. *See* Dkt. No. 40-1 at 8–9, 20, 24–25; Dkt. No. 40 at 2. Otherwise, a settlement check will be sent to all class members automatically. Dkt. No. 40-1 at 4, 23. Class members may also object to the settlement via mail or email. Dkt. No. 40-1 at 9–10, 24–25.

## II.   DISCUSSION

Settlement of class actions "must be fair, adequate, and reasonable." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012); *see* Fed. R. Civ. P. 23(e)(1)(B)(2). Under Federal Rule of Civil Procedure 23(e), settling claims brought by a proposed class requires provisional certification, notice to the class, and a fairness hearing before the court. In this case, for the reasons set forth herein, the Court finds that provisional certification and notice are warranted and will proceed to schedule a final fairness hearing.

### A.   Provisional Class Certification

To utilize Rule 23's procedure for aggregating claims, plaintiffs must make two showings. First, they "must establish 'there are questions of law or fact common to the class,' as well as demonstrate numerosity, typicality and adequacy of representation." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc) (quoting Fed. R. Civ. P. 23(a)). Second, plaintiffs must show that the class satisfies Rule 23(b) by demonstrating

"that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P 23(b). In addition, "[t]he criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). In the latter context, manageability at trial is not a concern, but "a district court must give heightened attention to the definition of the class or subclasses." *Id.* at 556–57; *accord Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the Court finds that Mr. Paredes Garcia has met his burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable under Rule 23(b) for purposes of preliminary settlement approval.

### 1.  Rule 23(a)

The class preliminarily satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a) because Mr. Paredes Garcia has demonstrated numerosity, commonality, typicality, and adequacy of representation.

#### (a) Numerosity

The proposed Class is comprised of 249 people identified through Harborstone's records and is therefore sufficiently numerous because "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Johnson v. City of Grants Pass*, 50 F.4th 787, 803 (9th Cir. 2022) (numerosity is generally satisfied when the class comprises 60 members or more).

#### (b) Commonality

Commonality is satisfied under Rule 23(a)(2) because there are numerous questions of law and fact common to the class based on Harborstone's alleged denial of loans to class members due to citizenship status and pulling of their consumer credit reports without a permissible purpose.

Dkt. No. 1-1 at 18–19; *see Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (commonality can be satisfied by even a "single significant question of law or fact" (cleaned up)).

### (c)  Typicality

Typicality is satisfied under Rule 23(a)(3) because Mr. Paredes Garcia's claims, like the claims of the class, arise out of the same alleged common course of conduct by Harborstone: wrongfully obtaining consumer credit reports for noncitizens residing in the United States even though Harborstone would not extend credit to these individuals, and denying loan applications because the applicants are noncitizens. Dkt. No. 1-1 at 15, 19; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992))).

### (d)  Adequacy

Adequacy is satisfied under Rule 23(a)(4) because Mr. Paredes Garcia will "fairly and adequately protect the interests of the class." His interests are coextensive with, and not antagonistic to, those of the class members. Class counsel have extensive experience litigating class actions and civil rights claims and have devoted a substantial amount of time investigating the applicable law and underlying facts. *See* Dkt. No. 34 at 1–6. To date, Mr. Paredes Garcia and his counsel have been prosecuting the action vigorously on behalf of the class. The Court is satisfied that class counsel will continue to devote the necessary time and resources to obtain final approval and ensure proper administration of the settlement. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

### 2.  Rule 23(b)(3)

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met for purposes of preliminary approval.

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 7

*(a) Predominance*

Predominance is satisfied because common questions present a significant aspect of the case and can be resolved for all class members in a single adjudication. *See* Dkt. No. 1-1 at 18–19; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Moreover, approving the class-wide settlement negotiated by the parties has important and desirable advantages of judicial economy over numerous individual settlements.

*(b) Superiority*

Superiority is satisfied because a class action in this context is superior to other available methods for fair and efficient adjudication of the controversy. Provisionally certifying the class and allowing the settlement to move through the approval process is superior to individual lawsuits, conserves judicial resources, and promotes consistent and efficient adjudication. *See Hanlon*, 150 F.3d at 1023 (a determination of superiority "involves a comparative evaluation of alternative methods of dispute resolution").

3.   Class Representative and Class Counsel

In light of the above, the Court appoints Mr. Paredes Garcia as class representative and Toby J. Marshall and Eric R. Nusser of Terrell Marshall Law Group PLLC as class counsel. *See* Dkt No. 40-1 at 2; Dkt. No. 40-2 at 3; *see also* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must . . . appoint class counsel under Rule 23(g)."). The Court finds that counsel will fairly and adequately represent the interests of the class, have worked to identify and investigate potential claims, have the requisite experience and legal knowledge, and will commit the necessary resources to representing the class. Fed. R. Civ. P. 23(g)(1), (4).

**B.   Preliminary Settlement Approval**

Having found that provisional class certification is appropriate, the Court turns now to the substance of the parties' proposed settlement.

1    1. <u>Legal Standard</u>

2         "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or

3    unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir.

4    2008). Before a district court approves a class action settlement, it must determine that the

5    settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d

6    667, 674–75 (9th Cir. 2008). And where the parties reach a class action settlement prior to class

7    certification, district courts apply "a higher standard of fairness and a more probing inquiry than

8    may normally be required under Rule 23(e)." *Dennis*, 697 F.3d at 864 (cleaned up). Pre-

9    certification settlement agreements "must withstand an even higher level of scrutiny for evidence

10   of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)," because at

11   this stage, "there is an even greater potential for a breach of fiduciary duty owed the class during

12   settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "This

13   more exacting review" helps "to ensure that class representatives and their counsel do not secure

14   a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty

15   to represent." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (cleaned up).

16        At the preliminary approval phase, courts evaluate whether "the proposed settlement

17   appears to be the product of serious, informed, non-collusive negotiations, has no obvious

18   deficiencies, does not improperly grant preferential treatment to class representatives or segments

19   of the class, and falls within the range of possible approval." *Rollins v. Dignity Health*, 336 F.R.D.

20   456, 461 (N.D. Cal. 2020); *accord Zwicky v. Diamond Resorts Mgmt. Inc.*, 343 F.R.D. 101, 119

21   (D. Ariz. 2022); *K.W. v. Armstrong*, 180 F. Supp. 3d 703, 723 (D. Idaho 2016). "The proposed

22   settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's

23   fiduciary obligations to the class." *Rollins*, 336 F.R.D. at 461. In addition, courts may not "delete,

24   modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*,

150 F.3d at 1026.

2. <u>Analysis</u>

The Court preliminarily approves the Amended Settlement Agreement and the terms set forth therein, for the reasons discussed below.

*(a) Signs of Conflict or Collusion*

(i)  Arm's Length Negotiations

As an initial matter, the Court notes that the Amended Settlement Agreement appears to be the result of serious, informed, and arm's-length negotiations between attorneys versed in the legal and factual issues of the case. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2022) ("[W]hen a settlement precedes class certification, the district court must apply an even higher level of scrutiny," which "requires the court to look for and scrutinize any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations" (cleaned up)). The record reflects that following the Court's denial of Harborstone's motion to dismiss in August 2021, the parties exchanged substantial discovery and began engaging in good faith settlement negotiations which lasted approximately one year. *See* Dkt. No. 33 at 16–17. The parties also expounded upon their year-long negotiations during the June 2 motion hearing. Based on the record before the Court, there are no indications that settlement negotiations were driven by self-interest rather than the class's interests.

However, the proposed agreement must also be examined for more "subtle signs" of collusion, such as (1) counsel receiving a disproportionate distribution of the settlement; (2) the parties negotiating a "clear sailing" arrangement; and (3) the parties creating a reverter that returns unclaimed funds to the defendant. *Roes, 1-2*, 944 F.3d at 1049.

(ii) No Reversion; *Cy Pres* Beneficiaries

With respect to the third factor, the Amended Settlement Agreement expressly provides

that "[t]here shall be no reversion to Harborstone Credit Union of any portion of the Settlement Fund." Dkt. No. 40-1 at 7. Moreover, the agreement mandates that if a class member's $750 check is not cashed within 180 days of mailing, the associated funds shall become "residual funds" and re-disbursed evenly among two nonprofit organizations: the Mexican American Legal Defense and Educational Fund ("MALDEF") and the Northwest Justice Project ("NJP"). *Id.* at 6.

In this context, a *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary"; there must be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (cleaned up). Such award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.* (cleaned up).

Counsel represents in their briefing and also affirmed during the motion hearing that MALDEF has advocated for consumer rights on behalf of DACA recipients and other noncitizens (including noncitizens who are not Latino) for many years, and that NJP litigates consumer and immigration rights cases. Dkt. No. 33 at 19; Dkt. No. 34 at 9. Furthermore, the Amended Settlement Agreement specifically directs MALDEF and NJP to use any residual funds received "to advocate for consumer rights issues related to or affecting participants in the Deferred Action for Childhood Arrivals program or other undocumented people living in the United States of America." Dkt. No. 40-1 at 6. Accordingly, the Court preliminarily finds that there is a sufficient nexus between the *cy pres* beneficiaries and the settlement class.

### (iii) Clear Sailing Arrangement and Proportionality

The Amended Settlement Agreement does include a clear sailing arrangement because Harborstone has agreed not to object to a $150,000 fee request by class counsel. *Id.*; *see Roes, 1-2*, 944 F.3d at 1049. "Although clear sailing provisions are not prohibited, they by their nature

deprive the court of the advantages of the adversary process in resolving fee determinations and are therefore disfavored." *In re Bluetooth*, 654 F.3d at 949. "Therefore, when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested." *Id.* at 948 (quotation marks omitted). The Court notes that Harborstone has agreed to fund up to $150,000 for costs and fees separately and such payment will not be deducted from the settlement fund. Dkt. No. 34-1 at 3. Even still, "agreement on attorneys' fees should be viewed as a package deal" in so far as it reflects "the defendant's overall willingness to pay." *In re Bluetooth*, 654 F.3d at 948–49 (cleaned up); *accord Roes, 1-2*, 944 F.3d at 1051. Here, of the $366,750 total cash going toward settlement, approximately 41% would go toward attorneys' fees.

As the Court cautioned during the June 2 hearing, it will carefully scrutinize the reasonableness of the requested attorneys' fee award at the final approval stage to determine if it is appropriate in this case. *In re Bluetooth*, 654 F.3d at 942. At this stage, however, the fee award appears appropriate. Class counsel explained during the hearing that as of June 2, 2023, they had incurred roughly $150,950 in fees and costs, and that they anticipate incurring a total of about $175,000 in fees by the end of the case—meaning the award equates to a "slight haircut." Accordingly, the Court does not find that the clear sailing provision weighs against preliminary approval. *See Juarez v. Soc. Fin., Inc.*, No. 20-CV-03386-HSG, 2022 WL 17722382, at *5 (N.D. Cal. Dec. 15, 2022).

### (b) Settlement Range

"To determine whether a settlement falls within the range of possible approval, courts focus on substantive fairness and adequacy and consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Zwicky*, 343 F.R.D. at 124 (cleaned up). Here, Harborstone will

pay $186,750 to be divided equally among the 249 class members. Dkt. No. 40-1 at 4. Counsel states that "[w]hile it is difficult to ascertain the actual damages each Class Member may have suffered by being denied for a loan by Harborstone, recent settlements in similar cases demonstrate that the $750 awarded to Settlement Class Members is a substantial recovery." Dkt. No. 33 at 17. Upon further questioning at the motion hearing regarding how the parties estimated damages in this case, counsel for Harborstone explained that the loan application amount does not necessarily correlate to the damage amount because there are various factors, such as an applicant's prior credit history, that can influence the net damages associated with being denied a loan. Counsel notes that in two similar cases brought in the Northern District of California, the district court approved settlement awards of up to $300 and $100, respectively, for verified claims by nationwide class members. Dkt. No. 33 at 18 (citing *Peña v. Wells Fargo Bank, N.A.*, No. 19-CV-4065-MMC (N.D. Cal. Jan. 8, 2021); *Perez v. Wells Fargo & Co.*, Case No. 17-CV-00454-MMC, (N.D. Cal. Jan. 8, 2021)). When asked to discuss the difference between the proposed per-class-member award here and the proposed award in *Juarez v. Social Finance, Inc.*, Case No. 20-cv-03386-HSG (N.D. Cal.), Harborstone's counsel explained that the $750 settlement amount here accounts for the strengths of its legal defenses to the FCRA and Section 1981 claims. Counsel for Mr. Paredes Garcia agreed that the strength of claims and defenses led to the $750 proposed award, and added that the facts of this case were more similar to the *Wells Fargo* cases than the *Social Finance* case.

In addition, Harborstone has agreed to change its lending policies such that noncitizens will be evaluated for loan eligibility on the same terms as U.S. citizen applicants, and will not be required to provide documentation showing they can legally remain in the United States through the maturity date of the loan. Dkt. No. 40-1 at 7. With respect to the monetary value of this prospective relief, Harborstone notes that in 2020, 84 class members applied for loans totaling $2,399,123 with an average loan application amount of $28,560.99, and in 2021, 99 class members

applied for loans totaling $3,606,072 with an average loan application amount of $36,424.97. Dkt. No. 40 at 2.[2]

Accordingly, at this juncture, the Court finds that the minimum $750 settlement payment per class member is within the range of possible approval.

### (c) Preferential Treatment

At the preliminary approval stage, district courts must also evaluate whether the proposed settlement "improperly grant[s] preferential treatment to class representatives or segments of the class[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). In this case, all settlement class members "will receive the same settlement award of $750 and will have the same opportunity to benefit from the prospective relief obtained." Dkt. No. 33 at 27. And though the Amended Settlement Agreement authorizes Mr. Paredes Garcia to seek a service award of $5,000, such awards are commonplace and "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Because the Court will ultimately consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any award request at that time, and in light of the preliminary indicia that such award is warranted, *see* Dkt. No. 33 at 10–11, the Court finds no basis to preclude preliminary approval on account of preferential treatment of class members.

### (d) Obvious Deficiencies

The Court also considers whether there are any obvious deficiencies in the settlement agreement. "Obvious deficiencies in a settlement agreement include 'any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations.'" *Zwicky*, 343

---

[2] Harborstone calculates the average loan application amount in 2020 as $28,560.59, *id.*, but that appears to be a typo; the correct amount is $28,560.99.

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 14

F.R.D. at 121 (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021)). For the reasons discussed herein, the Court finds no such deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

**C.      Class Notice Plan**

For class actions pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). With respect to the content of the notice itself,

> the notice must clearly and concisely state in plain, easily understood language:
> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class
> claims, issues, or defenses; (iv) that a class member may enter an appearance
> through an attorney if the member so desires; (v) that the court will exclude from
> the class any member who requests exclusion; (vi) the time and manner for
> requesting exclusion; and (vii) the binding effect of a class judgment on members
> under Rule 23(c)(3).

*Id.*

The parties have agreed that a third-party settlement administrator, Simpluris, will issue settlement notices via U.S. Mail and email (where class members' email addresses are available) in English and Spanish and maintain a website with the settlement notices. *See* Dkt. No. 40-1 at 3, 7–9; *see also* Dkt. No. 40 at 2.[3] Prior to mailing, Simpluris will verify class members' addresses using the National Change of Address database or a similar service. Dkt. No. 40-1 at 8. And to ensure that Simpluris' email messages do not get caught in spam filters, it will "run class members' email addresses through a database to ensure that the email address is valid." Dkt. No. 40 at 2. "This step helps prevent a large number of bounce backs, which can raise red flags for email servers and increase the chances that notice emails will be errantly caught by a spam filter." *Id.*;

---

[3] Based on its colloquy with counsel during the June 2 hearing, the Court is satisfied that translation into additional languages is not necessary.

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 15

*see also id.* at 3 ("[Simpluris] has assured Class Counsel that, based on its experience, the notice in this case has a very low chance of getting caught in class members' spam filters."). If mailed notices are returned as undeliverable, Simpluris will utilize "skip-tracing resources to search for updated mailing addresses, and if any are found, re-mail such notices[.]" Dkt. No. 40-1 at 8. Simpluris will also send reminder notices via email to all class members with email addresses no later than two business days after the motion for final approval is filed and notify class members that said motion is available on the settlement website. Dkt. No. 40 at 2; *see* Dkt. No. 40-1 at 9.

As for the contents of the notice itself, counsel has attached an amended English-language version to the Amended Settlement Agreement which addresses the Court's concerns discussed during the motion hearing. *See* Dkt. No. 40-1 at 19–26; Dkt. No. 40-3 at 17–24 (redlined version of initial proposed notice). The revised notice explains (1) the nature of the action; (2) the class definition; (3) Plaintiff's claims and allegations and Harborstone's denial of those allegations; (4) the basic terms of the settlement; (5) how to opt out or object; (6) that class members may retain their own counsel and appear through that counsel; and (7) the binding effect of a class judgment. Dkt. No. 40-1 at 19–26. Notably, counsel has added a clause on the second page of the notice indicating that regardless of whether a class member chooses to be excluded or object, they may still attend the final approval hearing, as well as more express guidance that class members may retain their own counsel. Dkt. No. 40-1 at 20, 24. The notice also now includes a description of Harborstone's policy changes resulting from the proposed settlement, and importantly, an option to opt out via mail, email, or a form on the settlement website, or to object via mail or email. *Id.* at 22–23, 24–25. Simpluris's forthcoming website will also have copies of the relevant case documents and instructions. *See id.* at 8–9. The notice further informs class members that class counsel will file a motion with the Court for attorneys' fees and costs, and that Mr. Paredes Garcia will seek a service award of up to $5,000. *Id.* at 22. The Court thus finds the content of the notice

to be satisfactory. *See Hyundai*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (cleaned up)).

Under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010). Although class counsel originally planned to grant class members 30 days to opt out or object, Dkt. No. 34-1 at 4, the amended agreement now provides for a 60-day opt out and objection period during which Plaintiff must file the motion for attorneys' fees at least 30 days before end of the 60-day period, Dkt. No. 40-1 at 4, 11. Moreover, as mentioned above, the parties' Amended Settlement Agreement and notice procedures now include a reminder notice via email shortly after the filing of the motions for final approval. *Id.* at 9. Accordingly, as discussed on the record at the hearing and pursuant to the parties' Amended Settlement Agreement and proposed notice, the Court orders the following notice schedule:

| Deadline | Event |
| --- | --- |
| Deadline to mail Notices of Settlement ("Initial Mailing Date") | July 24, 2023 |
| Deadline for Plaintiff's Motion for Final Approval and Attorneys' Fees and Costs | August 23, 2023 |
| Deadline to post Plaintiff's Motion for Final Approval and Attorney's Fees and Costs on Settlement Website | 1 Business Day after Filing of Motion |
| Deadline to send email reminder to Class Members contacted via email to inform them that Plaintiff's Motion for Final Approval and Attorney's Fees and Costs is posted on Settlement Website | 2 Business Days after Filing of Motion |
| Deadline for Class Members to postmark objections and exclusion requests ("Notice Deadline") | September 22, 2023 |
| Deadline for parties to file response to Class Member objections | October 2, 2023 |
| Final Approval Hearing | November 6, 2023 at 10:00 a.m. |

The Court finds that with these changes, the proposed notice provides sufficient time for class members to evaluate the proposed settlement and determine if they wish to be excluded or object.

### III.   CONCLUSION

Based on the foregoing, Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Dkt. No. 33, is GRANTED.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     Unless otherwise provided herein, all capitalized terms below have the same meaning as set forth in the Amended Settlement Agreement.

2.     The Court provisionally certifies the following Class for purpose of settlement: "All individuals who resided in the United States at the time they applied for a loan from Harborstone Credit Union, and for whom Harborstone obtained a credit report, and whose applications were declined at any time between January 26, 2018, and August 31, 2021 for the reason that they had a tax identification number because they were not permanent residents of the United States."

3.     For the reasons set forth above, the Class satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a) (numerosity, commonality, typicality, adequacy).

4.     For the reasons set forth above, the Class also satisfies the two requirements of Federal Rule of Civil Procedure 23(b)(3) (predominance and superiority).

5.     The Court appoints Mario Paredes Garcia to serve as Class Representative.

6.     The Court appoints Terrell Marshall Law Group PLLC as Class Counsel.

7.     The Court preliminarily approves the Amended Settlement Agreement and the terms set forth therein, including the amount of the Settlement Fund to be used to provide monetary awards to the Settlement Class Members.

8.      The Court preliminarily approves the Service Award payment of $5,000 to the Class Representative.

9.      The Court preliminarily approves the attorneys' fees and costs payment of $150,000.

10.      The Court appoints Simpluris as Settlement Administrator, which shall fulfill the Settlement Administration functions, duties, and responsibilities of the Settlement Administrator as set forth in the Amended Agreement and this Order. The Court preliminarily approves the payment of costs for Settlement Administration, up to $25,000.

11.      The Court approves the form and content of the English language Amended Settlement Notice substantially in the form attached as Exhibit A to the Amended Settlement Agreement, Dkt. No. 40-1 at 18–26, and Orders the Settlement Administrator to translate the English language Notice into Spanish and to provide both Notices to Class Members as set forth in Section II.I of the Amended Agreement.

12.      The Settlement Administrator shall comply with all notice requirements of Section II.I of the Amended Agreement. In compliance with those sections, beginning no later than twenty-one (21) days after entry of this Order (July 24, 2023), the Settlement Administrator shall cause notice to be delivered in the manner set forth in the Agreement to all Class Members who have been identified by the Parties' counsel.

13.      The Court finds that the Notices of Settlement and the manner of their dissemination described in Section II.I of the Amended Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Class Members of the pendency of this action, the terms of the Amended Agreement, and their right to opt out or object to the settlement and appear at the final approval hearing. The Court finds that the notice plan is reasonable, that it constitutes due, adequate, and sufficient notice to all

persons entitled to receive notice, and that it meets the requirements of due process, Fed. R. Civ. P. 23(c), and any other applicable laws.

14.     Settlement Class Members who wish to receive a Settlement Award payment from the Settlement Fund need not take any action to receive a payment. Settlement Awards will be distributed in accordance with Section II.B of the Amended Agreement.

15.     Class Members who wish to exclude themselves from the settlement must do one of the following:

a.  **Mail** an exclusion request letter to the Settlement Administrator, postmarked no later than September 22, 2023 (sixty (60) days after the Settlement Administrator's initial distribution of the Notices of Settlement (the "Initial Mailing Date")). To be valid, an exclusion request letter sent by mail must include (1) the person's name, address, and telephone number; (2) a statement from the person clearly asking to be excluded (for example: "I want to be excluded from the settlement in *Paredes Garcia v. Harborstone Credit Union*"); and (3) the person's signature;

b.  **Email** an exclusion request to the Settlement Administrator, sent no later than September 22, 2023 (sixty (60) days after the Initial Mailing Date). To be valid, an exclusion request sent by email must include (1) the person's name, address, and telephone number; (2) a statement from the person clearly asking to be excluded (for example: "I want to be excluded from the settlement in *Paredes Garcia v. Harborstone Credit Union*") (3) the person's electronic signature (for example: "Sincerely, John Doe"); or

c.  Submit an exclusion request using the **form on the settlement website** no later than September 22, 2023 (sixty (60) days after the Initial Mailing Date). To be

valid, an exclusion request submitted through the form on the settlement website must include (1) the person's name, address, and telephone number; (2) an affirmation from the person clearly asking to be excluded (for example: "I want to be excluded from the settlement in *Paredes Garcia v. Harborstone Credit Union*"); and (3) an affirmation that the person submitting the form is the Class Member whose name appears in the form or is otherwise authorized to submit the form on the person's behalf.

16. Settlement Class Members who wish to object to the Settlement must do one of the following:

    a. **Mail** an objection letter to the Settlement Administrator, postmarked no later than September 22, 2023 (sixty (60) days after the Initial Mailing Date). Objection letters submitted by mail must include (1) the person's name, address, and telephone number; (2) the name of the case, *Paredes Garcia v. Harborstone Credit Union,* Civil Case No. 3:21-cv-5148-LK; (3) the reasons why the person thinks the Court should not approve the settlement; (4) any supporting documentation the person wishes the Court to consider; and (5) the person's signature; or

    b. **Email** a written objection letter as an attachment to the Settlement Administrator no later than September 22, 2023 (sixty (60) days after the Initial Mailing Date). Objection letters submitted as attachments to an email must include (1) the person's name, address, and telephone number; (2) the name of the case, *Paredes Garcia v. Harborstone Credit Union,* Civil Case No. 3:21-cv-5148-LK; (3) the reasons why the person thinks the Court should not

approve the settlement; (4) any supporting documentation the person wishes the Court to consider; and (5) the person's signature.

Any objection not timely made in one of these two manners shall be waived and forever barred.

17.   Class Counsel shall file their motion for final approval, including their request for an award of attorneys' fees and costs, no later than August 23, 2023 (thirty (30) days before the "Notice Deadline"), sufficiently in advance of the expiration of the opt out and objection period so that Class Members will have sufficient information to decide whether to opt out or object and, if objecting, to make an informed objection. Class Counsel's motion for final approval, including their request for an award of attorneys' fees and costs, shall be posted on the settlement website no later than one (1) business day after filing. The Settlement Administrator shall send a reminder notice via email to all Class Members who previously received notice via email and inform them that Plaintiff's motion for final approval has been posted on the settlement website no later than two (2) business days after filing.

18.   Class Counsel shall file their responses to any Class Member objections no later than October 2, 2023 (ten (10) days after the Notice Deadline).

19.   A Final Approval Hearing shall be held before this Court on November 6, 2023 at 10:00 a.m., to determine whether the Amended Settlement Agreement is fair, reasonable, and adequate and should be given final approval. The Court may postpone, adjourn, or continue the Final Approval Hearing without further notice to the Settlement Class. After the Final Approval Hearing, the Court may enter a Final Approval Order and final judgment in accordance with the Amended Settlement Agreement, which will adjudicate the rights of the Class with respect to the claims being settled.

20.     All proceedings before the Court are stayed pending final approval of the settlement, except as may be necessary to implement the settlement or comply with the terms of the Amended Agreement.


Dated this 3rd day of July, 2023.


_Lauren King_
_____
Lauren King
United States District Judge